UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNCEY BLAKE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HOYT, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-00720-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 22, 31 |

## INTRODUCTION

Plaintiff, an inmate at Santa Clara Department of Corrections ("DOC") – Main Jail Complex, filed the instant *pro se* civil rights actions pursuant to 42 U.S.C. § 1983. These actions were consolidated on December 8, 2015. In the consolidated actions, Plaintiff alleges that Captain Hoyt, Lieutenant Borgzinner, Deputy Crawford, Chief John Hirokawa, and Deputy Hogan (collectively, "Defendants"), all employed by the Santa Clara County Office of the Sheriff ("Sheriff's Office"), denied him access to the courts, prevented him from petitioning the government for redress of grievances, and retaliated against him for exercising his First Amendment rights. Now before the Court are two summary judgment motions filed by Plaintiff, a summary judgment motion filed by Capt. Hoyt, Lt. Borgzinner, Deputy Crawford, and a summary judgment motion filed by that Chief John Hirokawa, Capt. Hoyt, and Deputy Hogan. For the reasons discussed below, Plaintiff's summary judgment motions are DENIED, and Defendants' summary judgment motions are GRANTED.

## PROCEDURAL BACKGROUND

On February 17, 2015, Plaintiff filed the instant action, hereinafter referred to as *Blake I*, which the Court found stated cognizable claims that Capt. Hoyt, Lt. Borgzinner, and Deputy

Crawford denied him access to the courts, prevented him from petitioning the government for redress of grievances, and retaliated against him for exercising his First Amendment rights. Docket No. 13 (amended complaint) and Docket No. 14 (order of service). On March 17, 2015, Plaintiff brought a separate action, hereinafter referred to as *Blake II*, which the Court found stated cognizable claims that Chief John Hirokawa, Capt. Hoyt, and Deputy Hogan denied him access to the courts, prevented him from petitioning the government for redress of grievances, and retaliated against him for exercising his First Amendment rights. *See* Compl., *Blake II* (ECF No. 11); and Order of Service, *Blake II* (ECF No. 12).

On November 9, 2015, Plaintiff filed a summary judgment motion in *Blake II*. Pl. Summ. J. Mot., *Blake II* (ECF No. 21). On December 7, 2015, Plaintiff filed the same summary judgment motion in the instant action. Docket No. 22. On that same day, Capt. Hoyt, Lt. Borgzinner, Deputy Crawford filed a summary judgment motion in the instant action (Docket No. 31), and Chief John Hirokawa, Capt. Hoyt, and Deputy Hogan filed a nearly identical summary judgment motion in *Blake II* (Dfdts. Summ. J. Mot., *Blake II* (Docket No. 31). On December 8, 2015, the Court granted Plaintiff's unopposed request to consolidate these two cases. Docket No. 37.

## FACTUAL BACKGROUND[1]

On November 14 and December 17, 2014, Plaintiff filed habeas corpus petitions in the Santa Clara County Superior Court in *In re Blake*, case no. F1451055, challenging his conditions of confinement at Elmwood Correctional Facility.[2] Docket No. 32-1 at 1. Plaintiff's petitions were denied for failure to exhaust the DOC's administrative remedies. Docket No. 32-1 at 3. The state superior court stated that the Santa Clara DOC's administrative grievance process required an inmate to appeal grievance denials by writing a letter to the appropriate division commander, and

---

[1] The facts are undisputed unless otherwise noted.
[2] The Court GRANTS Defendants' request to take judicial notice of the opinion issued by the Santa Clara County Superior Court in *In re Shawncey Blake*, case no. F1451055, signed January 9, 2015, and filed January 13, 2015. Docket No. 32. A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted) (granting request to take judicial notice in § 1983 action of five prior cases in which plaintiff was *pro se* litigant, to counter her argument that she deserved special treatment because of her *pro se* status).

2

requesting a written response. Docket No. 32-1 at 2. The state superior court stated that the division commander's written response is considered the final decision. *Id.* The state superior court concluded that Plaintiff had not demonstrated that he had exhausted administrative remedies because there was nothing in the record that indicated that Plaintiff had appealed the denial of his grievances. *Id.* at 2–3.

On December 31, 2014, Plaintiff was advised not to submit grievances as "indigent legal mail." Docket No. 35-2 at 1. Plaintiff was informed that if he submitted another grievance as "indigent legal mail," he would be issued an infraction. Docket No. 35-2 at 1.

## I. January 2015 Infraction[3]

On January 22, 2015, Plaintiff sent an appeal letter to Capt. Hoyt that appealed the denial of certain grievances he had filed and was intended to exhaust administrative remedies for these grievances. Docket No. 40 at 43–46. Plaintiff placed the letter in an envelope addressed to Capt. Hoyt and wrote "confidential legal mail" on the envelope. Docket No. 13 ("Am. Compl.") at 3.

That same day, Deputy Crawford issued Plaintiff an inmate infraction for disobeying a written order, a violation of DOC Rule 2-11, and for presenting false information or lying to staff, a violation of DOC Rule 2-15. Docket No. 35-4 at 1. Deputy Crawford stated that by mailing a grievance to Capt. Hoyt in an envelope marked "confidential" and "legal mail," Plaintiff had disobeyed the December 31, 2014 order to cease submitting grievances as "indigent confidential mail." Docket No. 35-4 at 1. Deputy Crawford also stated that Plaintiff presented false information in writing "confidential" and "legal mail" on the envelope because "the appeal and other grievances" are not confidential legal mail. Docket No. 35-4 at 1.

The next day, January 23, 2015, Capt. Hoyt responded in writing to Plaintiff's appeal letter. Docket No. 35-3 at 1–2.

On February 6, 2015, Lt. Borgzinner presided over the infraction hearing. Docket No. 35-5 at 1. Lt. Borgzinner found Plaintiff guilty of disobeying a written order from staff, but dismissed the charge of presenting false information to staff. Docket No. 35-5 at 1. Lt.

---

[3] This infraction is the subject of the complaint filed in *Blake I*.

3

Borgzinner ordered discipline of ten days of disciplinary lockdown. Docket No. 29 ("Hoyt Decl.") ¶ 22 and Ex. D. Capt. Hoyt reviewed the infraction and adjusted the discipline to two days of disciplinary lockdown. Hoyt Decl. ¶ 23 and Ex. D.

Plaintiff appealed Lt. Borgzinner's findings on February 6, 2015. Capt. Hoyt denied the appeal on March 3, 2015. Hoyt Decl. ¶ 24 and Ex. F.

## II.     February 2015 Infraction[4]

On February 24, 2015, Plaintiff sent another appeal letter to Capt. Hoyt that again appealed certain other grievances that he had filed. Hoyt Decl., Ex. G, *Blake II* (ECF No. 29-7) (complaining that Officers Tejada and DeStafani refused to answer his questions regarding conditions of confinement, that Officers Tejada and DeStafani failed to bring him requested grievance forms and inmate request forms, that Plaintiff was unable to make *pro per* phone calls, and that his housing unit lacked hot water). Plaintiff again placed his appeal letter in an envelope addressed to Capt. Hoyt and again wrote "confidential legal mail" on the envelope. Am. Compl. at 3, *Blake II* (ECF No. 11); Hogan Decl. ¶ 5, *Blake II* (ECF No. 26); Hoyt Decl., Ex. G, *Blake II*.

That same day, Deputy Hogan issued Plaintiff an inmate infraction for disobeying written and verbal orders to not label grievances or letters as "legal mail," and for falsely describing his appeal letter as legal mail. Hogan Decl. ¶¶ 7–9, *Blake II*; Hoyt Decl., Ex. H, *Blake II*. Disobeying written or verbal orders is a violation of DOC Rule 2-11, and presenting false information or lying to staff is a violation of DOC Rule 2-15. Hogan Decl. ¶¶ 7–9, *Blake II*; Docket No. 35-1 at 31.

On March 5, 2015, Lt. Meyers presided over the infraction hearing. Meyers Decl. ¶¶ 4, 6, *Blake II* (ECF No. 28). Lt. Meyers found Plaintiff not guilty because although Plaintiff had falsely labeled non-legal mail as legal mail and disobeyed direct orders from staff, Plaintiff had done so in an attempt to exhaust his administrative remedies. Meyers Decl. ¶ 6, *Blake II*. Lt. Meyers did not order any discipline for this infraction. Meyers Decl. ¶ 7, *Blake II*. Capt. Hoyt reviewed the infraction and agreed that leniency was appropriate since Plaintiff had violated the rules in an attempt to exhaust his administrative remedies. Hoyt Decl. ¶ 31, *Blake II*.

---

[4] This infraction was the subject of the complaint filed in *Blake II*.

4

### III. Santa Clara DOC Procedures Regarding Grievances and Mail

When inmates are booked into the Santa Clara DOC, they are provided with a copy of the Inmate Orientation Rulebook ("Rulebook"). The Rulebook sets forth the DOC's Inmate Grievance Procedure. Hoyt Decl. ¶ 3. Inmates may grieve any condition of confinement over which the DOC has control. Inmates initiate a grievance by completing a grievance form and handing the form to any officer. Docket No. 35-1 ("Rulebook") at 9. If the officer is unable to resolve the grievance, the grievance is forwarded to a sergeant. Rulebook at 9. If the sergeant is unable to resolve the grievance, the grievance is forwarded to the team lieutenant. Rulebook at 9. The team lieutenant will determine the appropriate action to take and provide the inmate with a written response. Rulebook at 9. If the grievance is denied in the written response, the inmate may appeal the decision by writing a letter to the facility captain. Rulebook at 9.

All appeal letters addressed to the facility captain are treated as confidential, unless they obviously contain contraband. Hoyt. Decl. ¶ 5. This means that only the facility captain and her confidential secretary will review the contents of the letter, and that the letter will not be reviewed by other DOC staff. Hoyt. Decl. ¶ 5. Inmates are instructed not to send grievance mail via the indigent legal mail system. Hoyt Decl. ¶ 8. The facility captain will provide a written response to the appeal letter, either affirming or reversing the denial. Docket No. 35-1 at 9.

The Rulebook also provides that inmates may "correspond confidentially with the Facility Captain, or the Chief of Correction" and provides that inmates will receive a written response to their confidential correspondence. Docket No. 35-1 at 9.

The DOC has the following practices governing inmate mail. All outgoing mail is treated as confidential and will not be opened unless it obviously contains contraband. Hoyt Decl. ¶ 7. Accordingly, if an envelope contains only paper, it will not be opened. Hoyt Decl. ¶ 7.

DOC inmates may send regular mail by addressing an envelope, purchasing postage, and handing it to their unit officer or sergeant. Hoyt Decl. ¶ 9. *Pro se* inmates may send legal mail by marking an envelope with the words "legal mail," and asking their unit officer or sergeant to place the envelope in the *pro per* legal mail box. Hoyt Decl. ¶ 10. The DOC processes legal mail separately from regular mail because legal mail postage is paid for by the California court system.

5

1  Hoyt Decl. ¶ 10. In addition, the DOC expedites processing of legal mail, and the prompt

2  processing of legal mail assists inmates in meeting court deadlines. Hoyt Decl. ¶ 10 and Docket

3  No. 31 at 17.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### II. Legal Claims

In Plaintiff's summary judgment motions, he argues that Defendants denied him access to the courts, prevented him from petitioning the government for redress of grievances, and retaliated against him for exercising his First Amendment rights. Docket No. 22 and Pl. Summ. J. Mot.,

6

*Blake II* (ECF No. 21). In Defendants' summary judgment motions and their opposition to Plaintiff's summary judgment motions, Defendants argue that they are entitled to summary judgment on Plaintiff's claims or, in the alternative, they are entitled to qualified immunity on Plaintiff's claims. Docket No. 31 and Dfdts. Mot. Summ. J., *Blake II* (ECF No. 31). In deciding the pending motions, the Court has considered the entire record.

### A. Exercise of First Amendment Rights

Plaintiff claims that he was exercising his First Amendment rights to petition the government for redress of grievances and to access the courts when he sent grievance appeal letters marked "confidential legal mail." He further argues that his First Amendment rights to access the courts and to file prison grievances "precludes jail officials from penalizing [him by issuing infractions] for exercising those rights." Docket No. 22 at 1. Defendants argue that they are entitled to summary judgment on Plaintiff's access to the courts claim because the undisputed evidence shows that Plaintiff's submission of grievance mail through the indigent legal mail system was not protected activity, because Defendants did not prevent Plaintiff from engaging in litigation or filing grievances through the DOC's established grievance process, because Plaintiff suffered no injury as a result of Defendants' actions, and because the DOC's penological interests justified any infringement of Plaintiff's constitutional rights.

### 1. Standard

Prisoners have a constitutional right of access to the courts.[5] *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). A prisoner's right to access the court

---

[5] The constitutional source of the right of access to the courts is not settled. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002); *Lewis*, 518 U.S. at 366–67 (Thomas, J., concurring). Supreme Court decisions have grounded the right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. *Christopher*, 536 U.S. at 415 n.12 (citing cases). The Ninth Circuit also has found various constitutional sources for the right. *See*, *e.g.*, *Cornett v. Donovan*, 51 F.3d 894, 897 (9th Cir. 1995) (right of access to courts grounded in due process and equal protection clauses); *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001) (use of prison grievance procedure protected by prisoner's right to meaningful access to courts along with broader right to petition government for redress of grievances); *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (nonprisoner case finding right of access to courts subsumed under First Amendment).

also protects the right to utilize established prison grievance procedures and to petition the government for redress of grievances. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987) (prisoners retain the constitutional right to petition the government for the redress of grievances (citing *Johnson v. Avery*, 393 U.S. 483 (1969)).

The Ninth Circuit has "traditionally differentiated between two types of access to courts claims: those involving prisoners' right to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). Plaintiff's claim falls into the latter category.

A prisoner's constitutional right to litigate does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from erecting barriers that impede the right of access of incarcerated persons. *Silva*, 658 F.3d at 1102–04 (reversing district court and finding cognizable denial of access-to-courts claim based on prisoner's allegations that he was repeatedly transferred between different facilities in order to hinder his ability to litigate his pending civil lawsuits, prison officials seized and withheld all of his legal files, and as a result of such actions several of his pending suits were dismissed).

To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 352. Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349). To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a nonfrivolous claim concerning his conviction or conditions of confinement. *See Lewis*, 518 U.S. at 354–55; *see also id.* at 348 (actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim"). With respect to a claim regarding active interference by prison officials, a prisoner alleges an actual injury if, as a result of the defendants' alleged actions, his pending suit was dismissed. *See Silva*, 658 F.3d at 1104.

Once the prisoner establishes a denial of access to the courts, the court should then determine whether the hindrance of the prisoner's access to court was reasonably related to legitimate penological interests. *See Lewis*, 518 U.S. at 361 (citing *Turner*, 482 U.S. at 89). If the hindrance passes the *Turner* test, the denial of access to the courts claim will fail even if there was actual injury.

### 2.  Analysis

#### a.  First Amendment Conduct

The Court agrees that Plaintiff was not exercising his First Amendment right to access the courts or exercising his First Amendment right to petition the government for redress of grievances when he chose to disobey DOC staff orders and label his grievance appeal letter "confidential legal mail." Plaintiff misunderstands DOC procedures and practices, and he misunderstands First Amendment jurisprudence.

Plaintiff applies an overly broad reading to the DOC procedures, and ignores DOC practices, in order to reach the mistaken conclusion that labeling his grievance appeal letters "confidential legal mail" was an exercise of his First Amendment right to petition the government for redress of grievances. Plaintiff argues that his appeal letter is not grievance mail. However, the appeal letter is intended to appeal the denial of his grievances and is the final level of the DOC grievance procedure. Rulebook at 9. The appeal letter is therefore properly considered grievance mail. Plaintiff also argues that the appeal letter was both confidential and legal, pursuant to the DOC Policy and Procedure Manual,[6] and therefore appropriately labelled. In support of this argument, Plaintiff correctly notes that the DOC Policy and Procedure Manual provides that he

---

[6] Defendants argue that the Court may not consider the excerpts of the DOC Policy and Procedure Manual that Plaintiff has filed because these documents have not been authenticated. Docket No. 41 at 3. Rule 56(c)(2) of the Federal Rules of Civil Procedure preclude the court from considering evidence presented at summary judgment that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Here, Plaintiff could present the DOC Policy and Procedure Manual in an admissible form by obtaining an affidavit from a DOC prison official or proving that these excerpts were provided to him by the DOC. Accordingly, the excerpts of the DOC Policy and Procedure Manual in the record may be considered by the Court on summary judgment. *See*, *e.g.*, *Patterson v. Reliance Standard Life Insurance Co.*, 2013 WL 6328832, *3 (C.D. Cal. Dec.4, 2013) (at summary judgment stage evidence may be considered if, while not presented in an admissible form, it could "be presented in an admissible form at trial") (citing, *inter alia*, *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)).

9

may communicate confidentially with Capt. Hoyt.  Docket No. 44 at 19 (Policy No. 14.05, VII).[7]

He also correctly notes that the DOC Policy and Procedure Manual defines "legal/privileged mail" as follows:

> Correspondence to or from persons and organizations including, but not limited to, courts, counsel, officials of a confining authority, state and local agency officers, grievance system administrators, paroling authority, medical professionals, religious institutions, or envelopes containing Money Orders or Cashier's Checks.

Docket No. 44 at 27 (Policy No. 17.13).  Plaintiff also argues that his grievance appeal letter was "legal for administrative exhaustion requirement, which . . . was sent to the courts to satisfy exhaustion requirements for court procedures."  Docket No. 40 at 5.

However, Plaintiff has been informed that, within the DOC, the "legal mail" designation on envelopes has a precise, specialized meaning, and should not be confused with the broader "legal/privileged mail" definition set forth in the DOC Policy and Procedure Manual or a layman's understanding of the words "legal" and "confidential."  Docket No. 35-2 at 1.  The DOC practice is that the "legal mail" designation on envelopes is used to identify mailings that may be sent via the indigent legal mail system.  The indigent legal mail system is intended for correspondence from indigent inmates to their attorneys or the courts.  Docket No. 44 at 29 (Policy No. 17.13, I.D.),[8] Hoyt Decl. ¶¶ 8–10.  Neither the DOC Policy and Procedure Manual nor the Rulebook require, specify, or suggest that grievance mail or confidential mail should be labelled "confidential mail" or "legal mail."

Plaintiff's initial confusion as to whether his grievance appeal letter could be labelled "confidential legal mail" is understandable.  There appears to be no written policy or procedure explaining when it is appropriate to use the "confidential mail" or "legal mail" designations on envelopes.  There also appears to be no written policy or procedures that distinguish the different types of confidential and legal mail.  But, on December 31, 2014, DOC staff clearly instructed Plaintiff that grievances, including letters appealing grievances, were not confidential legal mail

---

[7] In relevant part, Policy No. 14.05 states "An inmate may elect to write a confidential letter directly to any Division Commander or the Chief of Correction."  Docket No. 44 at 19.
[8] In relevant part, Policy No. 17.13 states that "[t]here is no limitation to the number of postage paid letters [for indigent inmates] for correspondence with attorneys or the courts."  Docket No. 44 at 29.

10

and should not be so labelled. Docket No. 35-2 at 1. Plaintiff's insistence on sending another grievance appeal letter marked "confidential legal mail" on January 22 and February 24, 2015, and his arguments in the instant action indicate that he continues to misunderstand that the "confidential legal mail" designation on outgoing mail has a meaning distinct from the general understanding of confidential mail or legal mail.

Plaintiff also misunderstands what constitutes protected activity under the First Amendment. A prisoner's First Amendment right to access the court protects the right to utilize *established* prison grievance procedures. *Bradley*, 64 F.3d at 1279. The DOC's established grievance procedure prohibits inmates from sending grievance mail marked as "confidential legal mail." Docket No. 44 at 29 (Policy No. 17.13, I.D.), Hoyt Decl. ¶¶ 8–10. Plaintiff argues that his appeal letter is unrelated to prison grievance procedures, but rather separate legal correspondence intended to exhaust his administrative remedies as directed by the state court judge who denied his habeas petition. Docket No. 40 at 6. Plaintiff misunderstands the exhaustion of administrative remedies requirement and the state court's denial of his habeas petition.

The requirement that inmates exhaust administrative remedies prior to bringing a § 1983 suit requires an inmate to pursue his claim through all levels of a prison's administrative gr process. *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005). To exhaust the DOC's administrative grievance process, inmates must appeal the denial of their grievances by submitting a written letter to the facility captain and obtaining a written response from the facility captain. Rulebook at 9. Plaintiff's appeal letters are the final level of the DOC's grievance process and are correctly understood to be grievance mail. In fact, if these letters were not part of the DOC grievance process, they would not exhaust Plaintiff's administrative remedies. *See*, *e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion [of administrative remedies] demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). In denying Plaintiff's state habeas petitions for failure to exhaust administrative remedies, the state court did not direct Plaintiff to submit a private, non-grievance-related letter to Capt. Hoyt. Rather, the state court indicated that Plaintiff needed to proceed

through all levels of the DOC's administrative grievance process and exhaust the administrative remedies available to him through the DOC. Docket No. 35-1 at 2.

Although Plaintiff had a First Amendment right to send grievance appeal letters to Capt. Hoyt, the First Amendment does not grant Plaintiff a right to send his appeal letters in a manner that violates DOC procedures and practices, e.g. to label them as "confidential legal mail."

### b. Interference with Ability to Utilize Established Grievance Procedure

Plaintiff has not proven that the prohibition against sending grievance appeal letters via indigent mail or the issued infractions interfered with his ability to utilize the established grievance procedure or to access the courts. Plaintiff is still able to utilize the established DOC grievance procedure and to access the courts (i.e., exhaust administrative remedies) in two ways. First, Plaintiff can mail a letter addressed to Capt. Hoyt via regular mail. DOC practice is to treat this mail as confidential, even without the "confidential" designation on the envelope, unless the mail obviously contains contraband. Hoyt Dec. ¶ 7. Second, Plaintiff could hand a letter addressed to Capt. Hoyt to his unit officer or sergeant who would deliver it free of charge. Hoyt Decl. ¶¶ 5, 8 and 9 and Docket No. 35-1 at 9. DOC practice is also to treat this kind of mail as confidential, even without the "confidential" designation on the envelope, unless the mail obviously contains contraband. Hoyt Dec. ¶ 7. In addition, since receiving these infractions, Plaintiff has continued to file grievances, correspond with Capt. Hoyt, and file court actions. Docket No. 42 at 8 ("[As of December 15, 2015,] I've continued to send Captain Hoyt appeal letters of denied grievances to exhaustion (sic) my remedies and file court actions . . ."). The undisputed evidence shows that the prohibition against sending grievance appeal letters via indigent mail and the issued infractions have not interfered with Plaintiff's ability to utilize the established grievance procedure and to access the courts.

### c. Actual Injury

The Court further agrees that Plaintiff has suffered no "actual injury" due to the prohibition against sending grievance appeal letters via indigent mail and the issuance of the infractions. Plaintiff has not cited any injury and there is no evidence of injury in the record. To establish an

access-to-the-courts claim, a plaintiff must show that the interference with his First Amendment right caused "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. The plaintiff must prove that the defendant's conduct was the actual and proximate cause of the alleged constitutional violation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

On January 9, 2015, Plaintiff's state habeas petitions were dismissed for failure to exhaust administrative remedies prior to filing the petition. Docket No. 32-1 at 2–3 (citing *In re Hudson*, 143 Cal. App. 4th 1, 4 (Cal. Ct. App. 2006)). Defendants issued infractions to Plaintiff on January 22 and February 24, 2015, after the state habeas petitions were denied. The infractions did not cause the dismissal of the petitions. In addition, although Plaintiff was issued infractions for mailing his appeal letters in envelops marked "confidential legal mail," Capt. Hoyt promptly responded to Plaintiff's appeal letter, thereby exhausting Plaintiff's administrative remedies. The undisputed evidence shows that Plaintiff suffered no actual injury from the prohibition against sending grievance appeal letters via indigent mail or the issuance of the infractions.

### d. Legitimate Penological Interests

Defendants argue that the DOC's practice of restricting the "confidential legal mail" designation to mail sent by indigent inmates to their attorneys or the courts is reasonably related to legitimate penological interests. Plaintiff does not directly address this argument, but reiterates that he was engaged in protected activity when he labeled his appeal letter "confidential legal mail."

To determine whether a prison regulation is reasonably related to a legitimate penological interest, the Court applies the four-factor *Turner* test that considers:

> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective, (2) whether there are alternative avenues that remain open . . . to exercise the right, (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1978)). Applying the *Turner* factors, the Court finds that the DOC's practice of

13

limiting indigent mail to correspondence sent by indigent inmates to their attorneys or the courts is reasonably related to the DOC's legitimate and neutral governmental objectives of fostering administrative efficiency, limiting expenses, and helping inmates meet court deadlines.

The DOC houses roughly 3,500 inmates. Hoyt Decl. ¶ 6. If inmates were allowed to use the indigent mail system for any mail related to litigation (e.g., an appeal letter intended to exhaust administrative remedies) or any confidential mail (e.g., a confidential letter to the facility captain), the volume of indigent mail would increase. In restricting the use of the indigent mail system, the DOC ensures indigent mail is processed quickly, and prioritizes mail that helps inmates meet court deadlines. Hoyt Decl. ¶¶ 6, 11.

As discussed in Section II.A.2.b *supra*, inmates have alternative avenues to communicate with the facility captain and exhaust their administrative remedies without placing the "confidential legal mail" designation on grievance appeal letters. *See* Section II.A.2.b *supra.* Accommodating Plaintiff's desire to have his appeal letters or confidential letters processed as indigent mail would result in other inmates' indigent mail being processed more slowly, decreasing administrative efficiency, and increasing expenses. Finally, refusing to allow Plaintiff to send his grievance appeal letters as "confidential legal mail" is not unduly burdensome since it only requires him to remove that designation from the mailing he sends out, but still provides him the ability to communicate confidentially and free of charge with Capt. Hoyt. The practice of restricting the "confidential legal mail" designation to mail sent by indigent inmates to their attorneys or the courts is rationally related to fostering administrative efficiency, limiting expenses, and helping inmates meet court deadlines.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's claims that Defendants denied him access to the courts and prevented him from petitioning the government for redress of grievances.

**B.  Retaliation**

    **1.  Standard**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). The prisoner bears the burden of pleading and proving absence of legitimate correctional goals for the conduct of which he complains. *Pratt*, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. *See Schroeder v. McDonald*, 55 F.3d 454, 461–62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer prisoner to preserve internal order and discipline and maintain institutional security).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

15

conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

The court should apply the four-factor test from *Turner v. Safley*, 482 U.S. 78 (1978), to determine whether the proffered legitimate penological interest is reasonably related to a regulation which infringes on a prisoner's constitutional rights, even in a retaliation analysis. *See Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009) (noting that Ninth Circuit's practice of balancing the importance of the legitimate penological interest against the importance of the prisoner's infringed right was disapproved by the Supreme Court in *Shaw v. Murphy*, 532 U.S. 223 (2001)).

Prisoners may not be retaliated against for exercising their right of access to the courts. *See Schroeder*, 55 F.3d at 461; *Rizzo v. Dawson*, 778 F.2d 527, 532 (1985) (retaliation for prisoner's work as jailhouse lawyer). This constitutional prohibition clearly includes retaliation for filing a complaint. *See Soranno's*, 874 F.2d at 1314. The right of access to the courts extends to established prison grievance procedures. *See Bradley*, 64 F.3d at 1279. Thus, a prisoner may not be retaliated against for using such procedures. *See Rhodes*, 408 F.3d at 567. The right to file a grievance is subsumed under the First Amendment right to petition the government for redress of grievances, *see Hines v. Gomez*, 853 F. Supp. 329, 333 (N.D. Cal. 1994), and protects both the filing, *see id.*, and content, *see Bradley*, 64 F.3d at 1279, of prison grievances.

### 2. Analysis

After reviewing all the evidence in the record, the Court finds that Defendants have shown that there is no triable issue of material fact with respect to four of the five elements of a First Amendment retaliation claim.

First, as discussed *supra* in section II.A.2.a, Plaintiff does not have a First Amendment right to send his grievance appeal letters in a manner that violates DOC procedures and practices, i.e. to send grievance appeal letters with the designation "confidential legal mail." *See supra* section II.A.2.a.

Second, there is no evidence that Defendants issued the infractions because Plaintiff was exercising his First Amendment rights. Defendants issued infractions to Plaintiff because Plaintiff had violated DOC rules. *See*, *e.g.*, Docket No. 27 ("Crawford Decl.") ¶¶ 8, 9 and Hogan Decl. ¶¶

16

8, 9, *Blake II* (ECF No. 26).  Plaintiff argues that the failure to discipline him for the February 24, 2015 letter proves that he did not violate any DOC rules, and proves that the February 24, 2015 infraction was purely retaliatory.  Docket No. 43 at 2.  Plaintiff misstates the record.  Defendants granted him leniency and assessed no punishment for the February 24, 2015 letter because they concluded that Plaintiff violated Rule 2-15 (disobeying direct orders from staff) because he misunderstood when to use the "confidential legal mail" designation.  Hoyt. Decl. ¶¶ 31, 32, *Blake II* (ECF No. 29).  In other words, although Plaintiff *did* violate a DOC rule, Defendants concluded it was appropriate to show him leniency under the circumstances.

Third, Defendants' actions did not have a chilling effect on Plaintiff.  Plaintiff does not specify any chilling effect, and there is no evidence in the record of a chilling effect.

Finally, Defendants' actions advanced legitimate penological goals.  As discussed *supra* in section II.A.2.d, the DOC's practice of restricting the "confidential legal mail" designation to mail sent by indigent inmates to their attorneys or the courts is reasonably related to legitimate penological interests of fostering administrative efficiency, limiting expenses, and helping inmates meet court deadlines.  In addition, the DOC's policy of issuing infractions for disobeying lawful direct orders given by prison officials advances legitimate penological goals.  The "essential goals" of correctional institutions are "institutional security and preserving internal order and discipline."  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Requiring inmates to comply with lawful direct orders reasonably advances the goals of institutional security and preserving internal order and discipline. Allowing inmates to disregard direct orders would undermine the authority of correctional officers and limit their ability to enforce prison rules.  Hoyt Decl. ¶ 14.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim. *See*, *e.g.*, *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) (rejecting retaliatory transfer claim because transfer of prisoner to another prison to distance him from two female officers who were fraternizing with him contrary to prison policy reasonably advanced a legitimate correctional goal).

**C.    Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. *See id*. If, however,

> a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 201–02 (internal quotation marks and citations omitted). Although *Saucier* required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The threshold question in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional or statutory violation. *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Here, there was no constitutional violation, so the Court need not reach the other prong of the qualified immunity analysis. As discussed *supra*, Defendants did not violate Plaintiff's First Amendment rights when they prohibited him from sending grievance appeal letters in envelopes marked "confidential legal mail" or when they issued him infractions for such actions. Nor did Defendants retaliate against Plaintiff for his exercise of his First Amendment rights. Accordingly, Defendants are entitled to judgment as a matter of law on their qualified immunity defense.

## CONCLUSION

For the foregoing reasons, Defendants' summary judgment motions (Docket No. 31 and


Dfdts. Summ. J. Mot., *Blake II* (ECF No. 31)) are GRANTED, and Plaintiff's summary judgment motions (Docket No. 22 and Pl. Summ. J. Mot., *Blake II* (ECF No. 21)) are denied. All pending motions are denied as moot.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: August 3, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHAWNCEY BLAKE,

    Plaintiff,

v.

HOYT, et al.,

    Defendants.

Case No. 15-cv-00720-HSG

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 3, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Shawncey Blake ID: DUJ722/14019586
Santa Clara Department of Corrections
Main Jail
150 West Hedding St
San Jose, CA 95110

Dated: August 3, 2016

Susan Y. Soong
Clerk, United States District Court

By:_____
Nikki D. Riley, Deputy Clerk to the
Honorable HAYWOOD S. GILLIAM, JR.

20